1  Nicholas A. Brown (SBN 198210)
     brownn@gtlaw.com
2  Xavier M. Brandwajn (SBN 246218)
     brandwajnx@gtlaw.com
3  GREENBERG TRAURIG, LLP
   4 Embarcadero Center, Suite 3000
4  San Francisco, CA 94111-5983
   Telephone: 415.655.1300
5  Facsimile: 415.520.5609

6  Attorneys for Plaintiff Tigo Energy Inc.

7

8              UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12 TIGO ENERGY INC.,                        Case No. 3:21-cv-02612

          Plaintiff,                        **COMPLAINT**
13                                          **FOR PATENT INFRINGEMENT**
          v.
14
   ALTENERGY POWER SYSTEMS INC.,
15
   ALTENERGY POWER SYSTEMS USA
16 INC., and

17 ZHEJIANG YUNENG TECHNOLOGY CO.,
   LTD.
18
          Defendants.
19

20

21

22

23

24

25

26

27

28

Plaintiff Tigo Energy Inc. ("Tigo") brings this complaint for patent infringement against Defendant Altenergy Power Systems Inc. ("APS-CA"), Alternergy Power Systems USA Inc. ("APS-WA"),   and Zhejiang Yuneng Technology Co., Ltd. ("APS-China") (collectively, "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1.    This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

**PARTIES**

2.    Plaintiff Tigo Energy Inc. ("Tigo") is a Delaware corporation, having its principal place of business at 655 Campbell Technology Pkwy., Campbell, CA 95008.

3.    On information and belief, Defendant Altenergy Power Systems Inc. ("APS-CA") is a California corporation having its principal place of business at 19925 Stevens Creek Blvd., Suite 100, Cupertino, CA 95014.

4.    On information and belief, APS-CA does business as "APsmart" and operates the website at www.apsmartglobal.com.

5.    On information and belief, Dr. Zhi-Min Ling is or has been the Chief Executive Officer and President of APS-CA.  Dr. Yuhao Luo is or has been the Chief Financial Officer, Secretary, and member of the Board of Directors of APS-CA.

6.    On information and belief, Defendant Altenergy Power Systems USA Inc. ("APS-WA") is a Washington corporation having its principal place of business at 600 Ericksen Ave NE, Suite 200, Seattle, WA 98110.

7.    On information and belief, APS-WA does business as "APsystems USA" and operates the website at www.apsystems.com.

8.    On information and belief, Dr. Zhi-Min Ling is or has been the Chief Executive Officer Chairman of the Board of APS-WA.  Dr. Yuhao Luo is or has been the Executive Vice President and a member of the Board of Directors of APS-WA.

9.    On information and belief, Defendant Zhejiang Yuneng Technology Co., Ltd. ("APS-China") is a Chinese corporation that maintains a place of business at No. 1 Yatai Road,

Nanhu District, Jiaxing City, Zhejiang Province, China.

10. On information and belief, APS-China does business as APsystems Yuneng, and operates the website at http://china.apsystems.com.

11. On information and belief, Dr. Zhi-Min Ling is the Chief Executive Officer, President and co-founder of APS-China, and Dr. Yuhao Luo is the Chief Technical Officer and co-founder of APS-China.

**PATENTS-IN-SUIT**

12. Tigo has been a technology leader in photovoltaic safety for many years, and has been awarded many patents, including U.S. Patent Nos. 8,653,689, 9,584,021, 9,966,848, 10,333,405, and 8,933,321 (collectively the "Patents-in-Suit").

13. U.S. Patent No. 8,653,689 ("'689 Patent") is titled "Systems and methods for an enhanced watchdog in solar module installations" and was duly and legally issued by the United States Patent and Trademark Office on April 9, 2019. Tigo is the owner and assignee of all substantial rights in the '689 Patent, a copy of which is attached as Exhibit 1.

14. U.S. Patent No. 9,584,021 ("'021 Patent") is titled "Systems and methods for enhanced efficiency auxiliary power supply module" and was duly and legally issued by the United States Patent and Trademark Office on February 28, 2017. Tigo is the owner and assignee of all substantial rights in the '021 Patent, a copy of which is attached as Exhibit 2.

15. U.S. Patent No. 9,966,848 ("'848 Patent") is titled "Systems and methods for enhanced efficiency auxiliary power supply module" and was duly and legally issued by the United States Patent and Trademark Office on May 8, 2018. Tigo is the owner and assignee of all substantial rights in the '848 Patent, a copy of which is attached as Exhibit 3.

16. U.S. Patent No. 10,333,405 ("'405 Patent") is titled "Systems and methods for enhanced efficiency auxiliary power supply module" and was duly and legally issued by the United States Patent and Trademark Office on June 25, 2019. Tigo is the owner and assignee of all substantial rights in the '405 Patent, a copy of which is attached as Exhibit 4.

17. U.S. Patent No. 8,933,321 ("'321 Patent") is titled "Systems and methods for an enhanced watchdog in solar module installations" and was duly and legally issued by the United

1   States Patent and Trademark Office on January 13, 2015.  Tigo is the owner and assignee of all

2   substantial rights in the '321 Patent, a copy of which is attached as Exhibit 5.

3                                    **JURISDICTION AND VENUE**

4        18.  This Court has subject matter jurisdiction over this patent infringement action

5   pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6        19.  On information and belief, this court has personal jurisdiction over APS-CA because

7   it is a California corporation having its principal place of business at 19925 Stevens Creek Blvd.,

8   Suite 100, Cupertino, CA 95014 and has committed acts of infringement in this district.

9        20.  On information and belief, this court has personal jurisdiction over APS-WA because

10  it maintains a place of business at 19925 Stevens Creek Blvd., Suite 100, Cupertino, CA 95014

11  and has committed acts of infringement in this district.

12       21.  On information and belief, this court has personal jurisdiction over APS-China

13  because it has committed acts of infringement in the United States and in this district, and because

14  it is vicariously liable for the acts of infringement committed by APS-CA and APS-WA as set

15  forth below.

16       22.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391

17  and §1400(b).  Plaintiff Tigo resides in this district.  On information and belief, Defendants have

18  committed acts of infringement in this district, APS-CA d/b/a APsmart resides in this district, and

19  APS-WA d/b/a APsystems maintains a place of business in this district and has committed acts of

20  infringement in this district.  In addition, venue in this District is proper for Defendant APS-China

21  pursuant to 28 U.S.C. § 1391(c)(3).

22                                        **BACKGROUND**

23       23.  National Electric Code § 690.12 requires that photovoltaic system circuits "installed

24  on or in buildings shall include a rapid shutdown function to reduce shock hazard for emergency

25  responders."

26       24.  Tigo is a leader in module-level rapid-shutdown technology.  Tigo's products include

27  module-level rapid shutdown units that are attached to photovoltaic panels, such as its TS4-A-F

28  product.  The Tigo TS4-A-F works in conjunction with a transmitter, such as the Tigo RSS (Rapid

Shutdown System) Transmitter, in order to provide a photovoltaic system that complies with the rapid-shutdown requirements of National Electric Code § 690.12.  Tigo's TS4-A-F and RSS Transmitter products are pictured below:

Tigo TS4-A-F:                                    Tigo RSS Transmitter




25.  Tigo also sells a RSS Signal Detector, which is a testing device for sensing the power-line communication (PLC) signal sent from Tigo's RSS Transmitter to Tigo's UL-certified Fire Safety solutions, including the TS4-A-F product shown above.



26.  Tigo has delivered more than 1 million rapid-shutdown products to end users.

27.  On information and belief, Defendants copied Tigo's product line in order to enter into the business of offering for sale, selling, and distributing products designed to enable photovoltaic systems to comply with the rapid shutdown requirements of National Electric Code

§ 690.12.

28.  Defendants' products include the APsmart RSD-S-PLC pictured below right.  Like Tigo's TS4-A-F, the APsmart RSD-S-PLC is a module-level rapid shutdown unit that is attached to individual photovoltaic panels.

Tigo TS4-A-F:                    APsmart RSD-S-PLC




29.  Defendants' products also include the APsmart Transmitter-PLC pictured below right.  Like the Tigo RSS Transmitter, the APsmart Transmitter-PLC provides a "heartbeat" signal along the powerline to enable a photovoltaic system that complies with NEC § 690.12.

Tigo RSS Transmitter:                          APsmart Transmitter-PLC




30.  Defendants' products also include the APsmart RSD-EYE Detector pictured below right.  Like the Tigo RSS Signal Detector, the RSD-EYE Detector is a testing device for sensing the power-line communication signal sent from the transmitter to the module-level rapid shutdown unit.





Tigo RSS Signal Detector:                    APsmart RSD-EYE Detector

31.  On information and belief, the APsmart RSD-S-PLC is designed to be connected to a photovoltaic ("PV") module in order to enable module-level rapid shutdown, and thus to enable PV modules to comply with National Electric Code § 690.12.  As shown for example in the APsmart Rapid Shutdown System Installation/User Manual, Rev. 2.2 2021/3/27 (Exhibit 6, available at https://apsmartglobal.com/wp-content/uploads/2021/03/4301915102_RSD-S-PLCTransmitter-PLC-User-Manual_Rev2.2_2021-3-27.pdf) the APsmart RSD-S-PLC is a "PV module rapid shutdown unit" that is designed to be installed onto a PV module, and to be connected between the output of a PV module and the power line connecting a set of at least eight PV modules to an inverter:



32.  On information and belief, the RSD-S-PLC is designed to work with the APsmart

Rapid Shutdown System (RSS) Transmitter-PLC product, as well as other compatible transmitters. While powered on, the RSS Transmitter-PLC or compatible transmitter sends a periodic "heartbeat" signal through the power line to the RSD-S-PLC units. While an RSD-S-PLC is receiving the heartbeat signal, it keeps its associated PV module(s) connected and supplying energy. When an RSD-S-PLC fails to receive the heartbeat signal for a period of time— approximately 7.5 seconds, which corresponds to approximately 7 missed signals—it "shuts down" its associated PV module, i.e. the RSD-S-PLC disconnects most or all of the power generated by associated PV module from the power line. After disconnection, the RSD-S-PLC then continues to monitor the power line for signals from the transmitter, and upon receiving the appropriate signal will reconnect the power generated by associated PV module to the power line.

33.  The RSD-S-PLC contains a circuit board as shown by the photographs below:





34.  A reverse-engineered schematic of the circuit board in the RSD-S-PLC is shown below:



35.  On information and belief, Defendants have made, used, sold, offered to sell, and/or imported sell RSD-S-PLC devices in the Northern District of California.

**APS CHINA IS LIABLE FOR THE ACTS OF APS-CA AND/OR APS-WA**

36.  Defendant APS-China is vicariously liable for the infringing acts of APS-CA and/or APS-WA in the United States pursuant to the court's equitable powers to pierce the corporate veil and disregard the corporate forms of APS-China, APS-WA, and APS-CA as separate and distinct entities, to prevent fraud, illegality, injustice, and/or a contravention of public policy, based on at least the following facts, each of which is alleged on information and belief:

a.  APS-CA and APS-WA are wholly-owned subsidiaries of APS-China.

b.  APS-China, APS-WA, and APS-CA are all controlled by Dr. Zhi-Min Ling and Dr. Yuhao Luo.

c.  Dr. Zhi-Min Ling is the President and Chief Executive Officer of APS-China, and he also currently serves as Chairman of the Board and as Chief Executive Officer of APS-WA.  Dr. Yuhao Luo is APS-China's Chief Technical Officer, and he also currently serves as APS-CA's Chief Financial Officer and Secretary and member of the APS-CA Board of Directors,

as well as Chairman of the Board and Chief Executive Officer of APS-WA.

d.      APS-China has used, and is continuing to use, its subsidiaries APS-WA and APS-CA as a shell for the affairs of APS-China.  APS-WA was formed on October 3, 2012 under the name "APS America Corp."

e.      APS-WA was organized with the backing and involvement of APS-China, for the purpose of commercializing in the United States solar power system products made by APS-China, including without limitation those accused of infringing the Patents-in-Suit.

f.      APS-China sets the prices for the accused products.

g.      At least one APS-China executive who is not an employee of either APS-WA or APS-CA attended the Solar Power International conference in Salt Lake City in September 2019 in order to market and sell the RSD-PLC product to potential customers in the United States.

h.      There is shared access to at least some categories of corporate records between APS-China and its subsidiaries, including without limitation relating to the accused products.

i.      APS-WA is not adequately capitalized.   A January 24, 2021 Dun & Bradstreet report identifies the company as a high-risk business, citing "significant stability and payment behavior concerns," "higher-than-average risk of discontinued operations or business inactivity," and "very-high potential for severely delinquent payments."  That same report states that APS-WA "was reported by the SBA as a recipient of a loan for $240,800 from MUFG Union Bank National Association on 04/28/2020 under the Paycheck Protection Program as authorized under the CARES Act of 2020."

j.      APS-CA is not adequately capitalized.  A January 24, 2021 Dun & Bradstreet report identifies the company as a moderate risk business, citing "some financial stress concerns," "moderately higher-than-average risk of financial stress," and "moderate potential for severely delinquent payments."

k.      APS-China uses the same branding and logo as APS-CA and APS-WA, and the three entities hold themselves out in interchangeable ways, including without limitation to the accused rapid shutdown devices.  Defendants' publicly available materials show that the rapid

shutdown side of their business is one component of a singular, global APsystems business that is managed by the same individuals and sells technical solutions developed by a single "team":







(Available at https://www.isolarbrokers.com/wp-content/uploads/2020/09/APsmart-RSD-Training_iSolarbroker_PDF.pptx.)

37.  On information and belief, not piercing the corporate veil would lead to inequitable results because APS-China would be allowed to infringe the Patents-in-Suit without repercussion and to pocket a portion of the profit for its sales of the accused products to APS-WA and/or APS-CA, thereby depriving Tigo of full satisfaction and compensation for Defendants' infringement.

38.  Additionally, on information and belief, Defendant APS-China is vicariously liable for the infringing acts in the United States pursuant to agency principles because APS-WA and/or APS-CA perform services—including without limitation the importation, marketing, and sale of the accused products in the United States—that are sufficiently important to APS-China that if APS-China did not have a representative to perform them, APS-China's own officials would undertake to perform substantially similar services.  For example, on information and belief, APS-WA and/or APS-CA are mere agents or conduits through which APS-China effectively sells the accused products to the United States, which is an important market and source of revenue for APS-China.  In addition, the rapid shutdown devices sold in the United States by APS-WA and APS-CA are an important component of the overall business of APS-China; it is one of the four components of the overall business' logo.  On information and belief, if APS-WA and/or APS-CA did not perform these services for APS-China, APS-China would undertake to perform these or substantially similar services in the United States, as reflected in part by the fact that APS-China has sent an executive to at least one trade conference in the United States to interact with potential customers of rapid shutdown systems or components thereof, including the accused products.

## COUNT ONE

### Infringement Of The '689 Patent

39.  Tigo restates and realleges each of the assertions set forth in the paragraphs above.

40.  On information and belief, Defendants have infringed and continue to infringe one or more claims of the '689 Patent, including but not limited to exemplary claims 1, 2, and 18, pursuant to 35 U.S.C. § 271, at least by without authority making, using, selling, offering for sale and/or importing the RSD-S-PLC and by inducing and/or contributing to infringement by others.

41.  Claims 1 and 2 of the '689 Patent recite:

1. A system comprising:

a solar panel;

a power bus, coupled to the solar panel, supporting transmission of AC communication signals, the power bus including a high current power wire;

a current transformer coupled to the high current power wire adjacent the solar panel, wherein the current transformer is operable to sense alternating current communication signals in a communication system monitoring solar panel performance; and

a capacitor, coupled to the power bus, connected in parallel with the solar panel between the solar panel and the current transformer.

2. The system of claim 1 wherein the power bus is a DC power line.

42.  Claim 18 of the '689 Patent recites:

18. An energy generation system for supporting AC communication signals comprising:

an array of solar panels;

an inverter;

a power bus, connecting the array of solar panels and the inverter, to transmit the AC communication signals;

a plurality of capacitors;

a plurality of current transformers coupled to the power bus, wherein each solar panel in the array is associated with a corresponding capacitor of the plurality of capacitors and a corresponding current transformer of the plurality of current transformers, the corresponding capacitor connected in parallel with the solar panel;

a parallel capacitor connected at a predetermined location along the power bus; and

a pair of current transformers, each current transformer of the pair positioned on each side of the parallel capacitor, secondary windings of the pair of current transformers connected to one another to form a separate path for the AC communication signals.

43. The RSD-S-PLC is designed and intended to be installed onto photovoltaic panels within an energy generation system containing at least one inverter, an array of photovoltaic panels containing at least one string of series-connected photovoltaic panels of sufficient length to generate sufficient voltage to allow the inverter to function, and a power bus connecting the array of photovoltaic panels.

44. Each RSD-S-PLC unit connects a photovoltaic panel to the power bus. The power bus includes a high current power wire that is adjacent to each photovoltaic panel that is connected to it through an RSD-S-PLC unit.

45. Each RSD-S-PLC unit is part of a rapid-shutdown solution that receives a periodic signal from a transmitter such as the APsmart Transmitter-PLC, and is part of a communication system monitoring photovoltaic panel performance. Each RSD-S-PLC unit automatically enters rapid shutdown mode when the transmitter is switched off or when communication with the transmitter has been interrupted.

46. Each RSD-S-PLC unit contains circuitry that enables it to sense the periodic signals from the transmitter, such as the APsmart Transmitter-PLC. On information and belief, that circuitry includes a transformer that generates a signal on its primary winding in response to the periodic signal (from a transmitter such as the APsmart Transmitter-PLC) passing through its secondary winding, which is coupled to the high current power wire that is included in the power bus portion adjacent to that panel. Thus, the transformer senses alternating current communication signals transmitted along the DC power bus/line.

47. On information and belief, RSD-S-PLC unit contains circuitry that also includes a capacitor (labeled C4 in the reverse-engineered circuit diagram shown above) which is coupled to the power bus and is connected to it in parallel with the photovoltaic panel. This capacitor C4 allows a high-frequency AC signal that is overlaid on the power bus (such as ones transmitted by the APsmart RSS Transmitter-PLC) to be transmitted through one RSD-S-PLC unit and onwards to the other RSD-S-PLC units in the string, even when one or more of the RSD-S-PLC units have entered rapid shutdown mode and have disconnected their associated solar panels from the DC power bus/line.

48.  On information and belief, the transformer in a first RSD-S-PLC unit in the string of series-connected photovoltaic panels and the transformer in a second RSD-S-PLC unit in the series-connected photovoltaic panels are positioned on opposite sides of the capacitor C4, and the secondary windings of these two transformers are connected to each other through C4 in order to provide a path allowing signals from the transmitter (such as ones transmitted by the APsmart Transmitter-PLC) to be transmitted through one RSD-S-PLC unit to the other RSD-S-PLC units in the string, even when one or more of the RSD-S-PLC units have entered rapid shutdown mode and have disconnected their associated solar panels from the DC power bus/line.

49.  Defendants have had notice of and have been aware of the '689 Patent at least since service of this complaint, and at least since they first became aware of the patents that Tigo identified to the SunSpec Alliance, which included the '689 Patent.

50.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by active inducement one or more claims of the '689 Patent, including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(b).  Defendants have done so by acts including but not limited to (1) selling, offering for sale, or importing the RSD-S-PLC which, when used as marketed and intended by Defendants, infringes the '689 Patent either literally or under the doctrine of equivalents; (2) marketing the infringing capabilities of the RSD-S-PLC; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of the RSD-S-PLC.  Defendants' continued performance of these affirmative acts with knowledge of the '689 Patent shows Defendants' intent, or willful blindness, that the induced acts directly infringe the '689 Patent.

51.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by contributing to the infringement of one or more claims of the '689 Patent, including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(c).  Defendants' affirmative acts of manufacturing, selling, offering for sale, and/or importing the RSD-S-PLC, in this District and elsewhere in the United States, contribute to Defendants'

customers and end-users directly infringing the '689 Patent with the RSD-S-PLC. The RSD-S-PLC is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by Defendants to be especially made and/or especially adapted for use in infringement of the '689 Patent. Defendants have performed and continue to perform these affirmative acts with knowledge of the '689 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '689 Patent.

52. In addition, on information and belief, Defendant APS-China is vicariously liable for the acts of infringement of the '689 Patent committed by Defendants APS-CA and/or APS-WA.

53. On information and belief, Tigo has suffered and continues to suffer damages as a result of Defendants' infringement of the '689 Patent in an amount to be determined at trial.

54. On information and belief, Defendants have continued with their infringement after receiving notice from Tigo, despite the objectively high likelihood that their actions constitute infringement and Defendants' subjective knowledge of this obvious risk. As Defendants have no good faith belief that they do not infringe the '689 Patent, Defendants' continued infringement is willful and deliberate, entitling Tigo to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT TWO

### Infringement The '021 Patent

55. Tigo restates and realleges each of the assertions set forth in the paragraphs above.

56. On information and belief, Defendants have infringed and continue to infringe one or more claims of the '021 Patent, including but not limited to exemplary claims 1 and 4, pursuant to 35 U.S.C. § 271, at least by without authority making, using, selling, offering for sale and/or importing the RSD-S-PLC and by inducing and/or contributing to infringement by others.

57. Claims 1 and 4 of the '021 Patent recite:

1. An apparatus, comprising:

a first stage power converter to generate a first output from a direct current input;

a second stage power converter connected to the first stage power converter to convert the first output to a second output;

a micro-controller;

a power absorption circuit; and

a control circuit coupled with the first stage power converter and the second stage power converter, the control circuit powered by the first output to control the second stage power converter, wherein:

when the second stage power converter is in a first mode of not providing the second output to power the micro-controller, the control circuit monitors a voltage of the first output powering the power absorption circuit and signals the second stage power converter to remain in the first mode during a time period in which the voltage is below a threshold; and

when the voltage is above the threshold, the control circuit signals the second stage power converter to enter a second mode of providing the second output to power the micro-controller.

4. The apparatus of claim 1, wherein the power absorption circuit comprises a switchable load.

58. The RSD-S-PLC operates based on power received from a solar module. The RSD-S-PLC contains at least one microcontroller, located at least in the PLC receiver chip shown in the reverse-engineered schematic below.



59. On information and belief, when the RSD-S-PLC powers on—for example when the solar module begins producing power in the morning—it goes through a multi-stage process.

60.  On information and belief, when the voltage difference between +Vin and -Vout rises above approximately 3V, the RSD-S-PLC draws current for a first stage power converter that is connected to a switchable load, which is a circuit that absorbs power.  At this stage, the RSD-S-PLC is not fully powered on and does not have full functionality.  For example, it is not able to detect the periodic signal from the transmitter.  At this stage the 12V pin of the chip marked "controller" in the reverse-engineered schematic is not providing a steady 12V output.  The 3.3V pin of the chip marked "PLC receiver" in the schematic is not providing a 3.3V output.

61.  On information and belief, when the voltage difference between +Vin and -Vout rises above approximately 8V, the RSD-S-PLC the device finishes power up and enters a mode with full functionality.  It is able to detect the periodic signal from the transmitter, the 12V pin of the chip marked "controller" is providing a steady 12V output, and the 3.3V pin is providing a 3.3V output.

62.  On information and belief, to enable this start-up behavior, the RSD-S-PLC contains a control circuit coupled with a first stage power converter and powered by that first stage power converter.  This control circuit powers on when the cross +Vin and -Vout rises above approximately 3V.  It monitors a voltage and signals a second stage power converter to remain off during a time period in which the RSD-S-PLC input voltage is below a threshold of approximately 8V.  When the RSD-S-PLC input voltage rises above the threshold of approximately 8V, the control circuit signals the second stage power converter to fully power-up the RSD-S-PLC device, including the microcontroller in the PLC receiver chip.  This is shown for example by a distinct increase in power consumption by the RSD-S-PLC device after the threshold of approximately 8V has been reached, by the change in the 12V and 3.3V outputs described above, and by the fact that the device is now able to detect the periodic signal from the transmitter.

63.  Defendants have had notice of and have been aware of the '021 Patent at least since service of this complaint.

64.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by active inducement one or more claims of the '021 Patent,

including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(b).  Defendants have done so by acts including but not limited to (1) selling, offering for sale, or importing the RSD-S-PLC which, when used as marketed and intended by Defendants, infringes the '021 Patent either literally or under the doctrine of equivalents; (2) marketing the infringing capabilities of the RSD-S-PLC; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of the RSD-S-PLC.  Defendants' continued performance of these affirmative acts with knowledge of the '021 Patent shows Defendants' intent, or willful blindness, that the induced acts directly infringe the '021 Patent.

65.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by contributing to the infringement of one or more claims of the '021 Patent, including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(c).  Defendants' affirmative acts of manufacturing, selling, offering for sale, and/or importing the RSD-S-PLC, in this District and elsewhere in the United States, contribute to Defendants' customers and end-users directly infringing the '021 Patent with the RSD-S-PLC.  The RSD-S-PLC is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by Defendants to be especially made and/or especially adapted for use in infringement of the '021 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the '021 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '021 Patent.

66.  In addition, on information and belief, Defendant APS-China is vicariously liable for the acts of infringement of the '021 Patent committed by Defendants APS-CA and/or APS-WA.

67.  On information and belief, Tigo has suffered and continues to suffer damages as a result of Defendants' infringement of the '021 Patent in an amount to be determined at trial.

68.  On information and belief, Defendants have continued with their infringement after receiving notice from Tigo, despite the objectively high likelihood that their actions constitute infringement and Defendants' subjective knowledge of this obvious risk.  As Defendants have no good faith belief that they do not infringe the '021 Patent, Defendants' continued infringement is

willful and deliberate, entitling Tigo to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT THREE**

**Infringement The '848 Patent**

69.  Tigo restates and realleges each of the assertions set forth in the paragraphs above.

70.  On information and belief, Defendants have infringed and continue to infringe one or more claims of the '848 Patent, including but not limited to exemplary claims 1 and 4, pursuant to 35 U.S.C. § 271, at least by without authority making, using, selling, offering for sale and/or importing the RSD-S-PLC and by inducing and/or contributing to infringement by others.

71.  Claims 1 and 4 of the '848 Patent recite:

1. An apparatus, comprising:

a first stage power converter to generate a first output from a direct current input;

a second stage power converter connected to the first stage power converter to convert the first output to a second output;

a micro-controller;

a power absorption circuit; and

a control circuit coupled with the first stage power converter and the second stage power converter, the control circuit powered by the first output to control the second stage power converter, wherein:

when the second stage power converter is in a first mode of not providing the second output to power the micro-controller, the control circuit monitors a voltage of the first output powering the power absorption circuit and signals the second stage power converter to remain in the first mode during a time period in which the voltage is below a threshold; and

when the voltage is above the threshold, the control circuit signals the second stage power converter to enter a second mode of providing the second output to power the micro-controller.

4. The apparatus of claim 1, wherein the power absorption circuit comprises a switchable load.

72.  The RSD-S-PLC operates based on power received from a solar module, which produces direct current.  The RSD-S-PLC contains at least one microcontroller, located at least in the PLC receiver chip shown in the reverse-engineered schematic below.



73.  On information and belief, when the RSD-S-PLC powers on—for example when the solar module begins producing power in the morning—it goes through a multi-stage process.

74.  On information and belief, when the voltage difference between +Vin and -Vout rises above approximately 3V, the RSD-S-PLC draws direct current from the solar module for a first stage power converter that is connected to a switchable load, which is a circuit that absorbs power.  At this stage, the RSD-S-PLC is not fully powered on and does not have full functionality.  For example, it is not able to detect the periodic signal from the transmitter.  At this stage the 12V pin of the chip marked "controller" in the reverse-engineered schematic is not providing a steady 12V output.  The 3.3V pin of the chip marked "PLC receiver" in the schematic is not providing a 3.3V output.

75.  On information and belief, when the voltage difference between +Vin and -Vout rises above approximately 8V, the RSD-S-PLC the device finishes power up and enters a mode with full functionality.  It is able to detect the periodic signal from the transmitter, the 12V pin of the chip marked "controller" is providing a steady 12V output, and the 3.3V pin is providing a 3.3V output.

76.  On information and belief, to enable this start-up behavior, the RSD-S-PLC contains a control circuit coupled with a first stage power converter and powered by that first stage power converter.   This control circuit powers on when the cross +Vin and -Vout rises above approximately 3V.  It monitors a voltage and signals a second stage power converter to remain off during a time period in which the RSD-S-PLC input voltage is below a threshold of approximately 8V.  When the RSD-S-PLC input voltage rises above the threshold of approximately 8V, the control circuit signals the second stage power converter to fully power-up the RSD-S-PLC device, including the microcontroller in the PLC receiver chip.  This is shown for example by a distinct increase in power consumption by the RSD-S-PLC device after the threshold of approximately 8V has been reached, by the change in the 12V and 3.3V outputs described above, and by the fact that the device is now able to detect the periodic signal from the transmitter.

77.  Defendants have had notice of and have been aware of the '848 Patent at least since service of this complaint.

78.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by active inducement one or more claims of the '848 Patent, including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(b).  Defendants have done so by acts including but not limited to (1) selling, offering for sale, or importing the RSD-S-PLC which, when used as marketed and intended by Defendants, infringes the '848 Patent either literally or under the doctrine of equivalents; (2) marketing the infringing capabilities of the RSD-S-PLC; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of the RSD-S-PLC.  Defendants' continued performance of these affirmative acts with knowledge of the '848 Patent shows Defendants' intent, or willful blindness, that the induced acts directly infringe the '848 Patent.

79.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by contributing to the infringement of one or more claims of the '848 Patent, including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(c).

Defendants' affirmative acts of manufacturing, selling, offering for sale, and/or importing the RSD-S-PLC, in this District and elsewhere in the United States, contribute to Defendants' customers and end-users directly infringing the '848 Patent with the RSD-S-PLC.  The RSD-S-PLC is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by Defendants to be especially made and/or especially adapted for use in infringement of the '848 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the '848 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '848 Patent.

80.  In addition, on information and belief, Defendant APS-China is vicariously liable for the acts of infringement of the ''848 Patent committed by Defendants APS-CA and/or APS-WA.

81.  On information and belief, Tigo has suffered and continues to suffer damages as a result of Defendants' infringement of the '848 Patent in an amount to be determined at trial.

82.  On information and belief, Defendants have continued with their infringement after receiving notice from Tigo, despite the objectively high likelihood that their actions constitute infringement and Defendants' subjective knowledge of this obvious risk.  As Defendants have no good faith belief that they do not infringe the '848 Patent, Defendants' continued infringement is willful and deliberate, entitling Tigo to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT FOUR

### Infringement The '405 Patent

83.  Tigo restates and realleges each of the assertions set forth in the paragraphs above.

84.  On information and belief, Defendants have infringed and continue to infringe one or more claims of the '405 Patent, including but not limited to exemplary claims 1 and 2, pursuant to 35 U.S.C. § 271, at least by without authority making, using, selling, offering for sale and/or importing the RSD-S-PLC and by inducing and/or contributing to infringement by others.

85.  Claims 1 and 2 of the '405 Patent recite:

1. An apparatus, comprising:

a micro-controller;

a first stage power converter to generate a first output from a direct

current input;

a switchable load powered by the first output;

a control circuit powered by the first output; and

a second stage power converter connected to the first stage power converter and configured to convert the first output to a second output;

wherein the control circuit is configured to block the second stage power converter from powering the micro-controller using the second output in a time period that is after the control circuit is powered by the first output and before a predefined condition is met in the control circuit; and

wherein the control circuit is configured to signal the switchable load to be in a first state of consuming the first output during the time period and to be in a second state of not consuming the first output after the time period.

2. The apparatus of claim 1,

wherein the predefined condition includes a voltage of the first output reaching a threshold.

86. The RSD-S-PLC operates based on power received from a solar module, which produces direct current. The RSD-S-PLC contains at least one microcontroller, located at least in the PLC receiver chip shown in the reverse-engineered schematic below.



87.  On information and belief, when the RSD-S-PLC powers on—for example when the solar module begins producing power in the morning—it goes through a multi-stage process.

88.  On information and belief, when the voltage difference between +Vin and -Vout rises above approximately 3V, the RSD-S-PLC draws direct current from the solar module for a first stage power converter that is connected to a switchable load, which is a circuit that absorbs power. At this stage, the RSD-S-PLC is not fully powered on and does not have full functionality.  For example, it is not able to detect the periodic signal from the transmitter.  At this stage the 12V pin of the chip marked "controller" in the reverse-engineered schematic is not providing a steady 12V output.  The 3.3V pin of the chip marked "PLC receiver" in the schematic is not providing a 3.3V output.

89.  On information and belief, when the voltage difference between +Vin and -Vout rises above approximately 8V, the RSD-S-PLC the device finishes power up and enters a mode with full functionality.  It is able to detect the periodic signal from the transmitter, the 12V pin of the chip marked "controller" is providing a steady 12V output, and the 3.3V pin is providing a 3.3V output.

90.  On information and belief, to enable this start-up behavior, the RSD-S-PLC contains a control circuit coupled with the first stage power converter and powered by that first stage power converter.  This control circuit powers on when the cross +Vin and -Vout rises above approximately 3V.  It monitors a voltage and ensures that the second stage power converter remains off during a time period in which the RSD-S-PLC input voltage is below a threshold of approximately 8V.  When the RSD-S-PLC input voltage rises above the threshold of approximately 8V, the control circuit signals the second stage power converter to fully power-up the RSD-S-PLC device, including the microcontroller in the PLC receiver chip.  This is shown for example by a distinct increase in power consumption by the RSD-S-PLC device after the threshold of approximately 8V has been reached, by the change in the 12V and 3.3V outputs described above, and by the fact that the device is now able to detect the periodic signal from the transmitter.

91.  Defendants have had notice of and have been aware of the '405 Patent at least since service of this complaint.

92.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by active inducement one or more claims of the '405 Patent, including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(b).  Defendants have done so by acts including but not limited to (1) selling, offering for sale, or importing the RSD-S-PLC which, when used as marketed and intended by Defendants, infringes the '405 Patent either literally or under the doctrine of equivalents; (2) marketing the infringing capabilities of the RSD-S-PLC; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of the RSD-S-PLC.  Defendants' continued performance of these affirmative acts with knowledge of the '405 Patent shows Defendants' intent, or willful blindness, that the induced acts directly infringe the '405 Patent.

93.  By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by contributing to the infringement of one or more claims of the '405 Patent, including but not limited to exemplary claim 1, pursuant to 35 U.S.C. § 271(c). Defendants' affirmative acts of manufacturing, selling, offering for sale, and/or importing the RSD-S-PLC, in this District and elsewhere in the United States, contribute to Defendants' customers and end-users directly infringing the '405 Patent with the RSD-S-PLC.  The RSD-S-PLC is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by Defendants to be especially made and/or especially adapted for use in infringement of the '405 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the '405 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '405 Patent.

94.  In addition, on information and belief, Defendant APS-China is vicariously liable for the acts of infringement of the '405 Patent committed by Defendants APS-CA and/or APS-WA.

95.  On information and belief, Tigo has suffered and continues to suffer damages as a result of Defendants' infringement of the '405 Patent in an amount to be determined at trial.

96.  On information and belief, Defendants have continued with their infringement after

receiving notice from Tigo, despite the objectively high likelihood that their actions constitute infringement and Defendants' subjective knowledge of this obvious risk.  As Defendants have no good faith belief that they do not infringe the '405 Patent, Defendants' continued infringement is willful and deliberate, entitling Tigo to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT FIVE

### Infringement Of Claim 5 The '321 Patent

97.  Tigo restates and realleges each of the assertions set forth in the paragraphs above.

98.  On information and belief, Defendants have infringed and continue to infringe claim 5 of the '321 Patent, pursuant to 35 U.S.C. § 271, at least by without authority making, using, selling, offering for sale and/or importing the RSD-S-PLC and by inducing and/or contributing to infringement by others.

99.  Claim 5 of the '321 Patent recites:

1. A system comprising:

a watchdog unit coupled between a solar module and a power bus, the power bus configured to connect a plurality of solar modules to an inverter, the watchdog unit having:

a local controller configured to monitor a communication from a central controller remote from the solar module and determine whether the communication has been interrupted for a time period longer than a predetermined number of allowed skips; and

at least one switch configured to disconnect the solar module from the power bus in response to a determination by the location controller that the communication from the central controller has been interrupted for a time period longer than the predetermined number of allowed skips;

wherein the watchdog unit is configured to connect the solar module to the power bus when the communication is not interrupted.

5. The system of claim 1, further comprising a bypass circuit configured to enable current in the power bus to bypass the solar module when the switch disconnects the solar module from the power bus.

100. The RSD-S-PLC is a watchdog unit that is designed and intended to be used in a system where it is coupled between a solar module and a power bus that is configured to connect a plurality of solar modules to an inverter. In particular, the RSD-S-PLC is part of a rapid-shutdown solution that receives a periodic signal from a transmitter such as the APsmart RSS Transmitter-PLC, that automatically enters rapid shutdown mode when the transmitter is switched off, and that resumes energy production when power is restored to the transmitter. As shown for example in the "RSD-S-PLC Wiring Diagram" contained in the APsmart Rapid Shutdown System Installation/User Manual, the RSD-S-PLC is installed so that it connects a solar module to a power line that in turn connects multiple solar modules to an inverter.



① RSD-S-PLC
② Transmitter-PLC
③ Inverter

101. The RSD-S-PLC contain a local controller configured to monitor a communication from a central controller remote from the solar module and determine whether the communication has been interrupted for a time period longer than a predetermined number of allowed skips. The RSD-S-PLC contains a local controller, as shown for example in the photograph below:



The RSD-S-PLC's local controller monitors a signal from a remote central controller. While it

detects the presence of the signal, the RSD-S-PLC's controller keeps its associated solar module connected and supplying energy to the power line.  When the RSD-S-PLC's local controller fails to receive the signal for a period of time—approximately 7.5 seconds, which corresponds to approximately 7 missed signals—it "shuts down" its associated solar module, i.e. the RSD-S-PLC opens at least one switch in order to disconnect the power generated by its associated solar module from the power line.

102. The RSD-S-PLC contains at least one switch configured to disconnect the solar module from the power bus in response to a determination by the local controller that the communication from the central controller has been interrupted for a time period longer than the predetermined number of allowed skips.  In particular, the reverse-engineered schematic of the RSD-S-PLC shows that it contains at least one switch.  When a RSD-S-PLC fails to receive the signal for a period of time—approximately 7.5 seconds, which corresponds to approximately 7 missed signals—it opens the switch(es) in order to disconnect the power generated by its associated solar module from the power line.

103. The RSD-S-PLC is a watchdog unit that is configured to connect the solar module to the power bus when the communication is not interrupted for more than the predetermined number of skips.  In particular, while the RSD-S-PLC's controller detects that it has not failed to receive the signal for a period of time—approximately 7.5 seconds, which corresponds to approximately 7 missed signals—the RSD-S-PLC's controller keeps its switches closed so that the associated solar module is connected to the power line.

104. The RSD-S-PLC contains a diode (labeled D3 in the reverse-engineered schematic shown above) which along with its associated wiring is a bypass circuit that is configured to enable current in the power bus to bypass the solar module when the switch disconnects the solar module from the power bus.

105. Defendants have had notice of and have been aware of the '321 Patent and their infringement of the '321 Patent at least since October 2, 2019, when Tigo sent Dr. Zhi-Min Ling a letter, copied to Dr. Yuhao Luo, notifying them of Defendants infringement of the '321 Patent, and at least since they first became aware of the patents that Tigo identified to the SunSpec

Alliance, which included the '321 Patent.

106. By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by active inducement one or more claims of the '321 Patent, including but not limited to claim 5, pursuant to 35 U.S.C. § 271(b).  Defendants have done so by acts including but not limited to (1) selling, offering for sale, or importing the RSD-S-PLC which, when used as marketed and intended by Defendants, infringe the '321 Patent either literally or under the doctrine of equivalents; (2) marketing the infringing capabilities of the RSD-S-PLC; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of the RSD-S-PLC.  Defendants have performed and continue to perform these affirmative acts with knowledge of the '321 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '321 Patent.

107. By continuing to make, use, sell, offer to sell, and/or import the RSD-S-PLC after Defendants first had notice of Tigo's allegations of infringement, Defendants indirectly infringe and continue to indirectly infringe by contributing to the infringement of one or more claims of the '321 Patent, including but not limited to claim 5, pursuant to 35 U.S.C. § 271(c).  Defendant's affirmative acts of manufacturing, selling, offering for sale, and/or importing the RSD-S-PLC, in this District and elsewhere in the United States, contribute to Defendants' customers and end-users directly infringing the '321 Patent with the RSD-S-PLC.  The RSD-S-PLC is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by Defendants to be especially made and/or especially adapted for use in infringement of the '321 Patent. Defendants have performed and continue to perform these affirmative acts with knowledge of the '321 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '321 Patent.

108. In addition, on information and belief, Defendant APS-China is vicariously liable for the acts of infringement of the '321 Patent committed by Defendants APS-CA and/or APS-WA.

109. On information and belief, Tigo has suffered and continues to suffer damages as a result of Defendants infringement of the '321 Patent in an amount to be determined at trial.

110. On information and belief, Defendants have continued with their infringement after receiving notice from Tigo, despite the objectively high likelihood that their actions constitute infringement and Defendants' subjective knowledge of this obvious risk.  As Defendants have no good faith belief that they do not infringe the '321 Patent, Defendants' continued infringement is willful and deliberate, entitling Tigo to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Tigo respectfully requests that the Court enter judgment in its favor against Defendants, granting the following relief:

a) A judgment that Defendants have infringed and are infringing the Patents-in-Suit.

b) An award of damages adequate to compensate Tigo for Defendants' patent infringement, and an accounting to adequately compensate Signify for the infringement, including not less than a reasonable royalty.

c) A judgment that Defendants' infringement the of the Patents-in-Suit was willful and that Defendants' continued infringement of the Patents-in-Suit is willful, and an award of damages to Tigo for Defendants' willful infringement;

d) An award of pre-judgment and post-judgment interest at the maximum rate allowed by law.

e) A judgment that this is an exceptional case and an award to of Tigo its costs, expenses, disbursements, and reasonable attorneys' fees related to Defendants' patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law;

f) An award of costs, and expenses as allowed by law; and

g) Such other further relief, in law or equity, as this Court deems just and proper.


## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Tigo demands jury trial on all issues and claims so triable.

1

DATED:  April 9, 2021                                    **GREENBERG TRAURIG, LLP**

2

3                                                                        By:   */s/ Nicholas A. Brown*

4                                                                        Nicholas A. Brown (SBN 198210)
                                                                         brownn@gtlaw.com
5                                                                        GREENBERG TRAURIG, LLP
                                                                         4 Embarcadero Center, Suite 3000
6                                                                        San Francisco, CA 94111-5983
                                                                         Telephone: 415.655.1271
7                                                                        Facsimile: 415.520.5609

8                                                                        Counsel for Plaintiff Tigo Energy, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28